**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Raymond P. Moore**

Criminal Case No. 24-cr-00186-RM
(Civil Action No. 26-cv-02563-RM)

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

v.

DONALD EDWARD TRUJILLO BRANSFORD,

Defendant/Movant.

---

**ORDER DENYING § 2255 MOTION**

---

This matter is before the Court on the *pro se* motion of Defendant/Movant ("Trujillo") filed on June 8, 2026, and styled "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" (ECF No. 73) (the "Original Motion"). The Original Motion was supplemented on June 22, 2026 (ECF No. 76, hereinafter "Supplement 1"), and again on July 6, 2026 (ECF No. 79, hereinafter "Supplement 2"). Together, the Original Motion, Supplement 1, and Supplement 2 are referred to as the "Motion." The Court has considered the Motion and has also considered the "United States' Response to Motion to Vacate" (ECF No. 87) (the "Response"). The Court has considered Trujillo's "Reply to United States' Answer to 28 U.S.C. § 2255 Motion" (ECF No. 88, 89)[1] (the "Reply") as well. Finally, the Court has reviewed the

[1] The Reply was filed twice – on different dates. The text and arguments appear to be the same, but the font, pagination, and signature blocks are different. ECF No. 89 also has a typing error ("rel;ief" at p. 2) which is not in ECF No. 88. Other than these and some minor differences in the heading, the Court discerns only three differences of substance, none being of any true importance. First, the certificates of service differ. Second, the method of filing differs. (ECF No. 88 by electronic filing, and ECF No. 89 by mail.) Third, ECF No. 88 bears only this matter's criminal case number, and ECF No. 89 bears only the civil action number. As ECF No. 88 was first to arrive and has a cleaner font, citations to the "Reply" will be solely to ECF No. 88. The Court views ECF No. 89 as being redundant and as having been filed out of an abundance of caution.

docket in this matter generally. Based on its review, and for the reasons which follow, the Motion is DENIED.

## I. Background.

On June 12, 2024, a three-count indictment was returned charging Trujillo with the following felony offenses: Count 1 – possession with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); Count 2 – possession of a firearm in furtherance of a drug trafficking crime (specifically Count 1) in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Count 3 – possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). These charges stemmed from the government's seizure of drugs, firearms, and money from Trujillo's residence and property during the execution of a federal search warrant on May 29, 2024.

On April 29, 2025, Trujillo pleaded guilty to Count 2, the § 924(c) count, pursuant to a plea agreement with the United States. (ECF No. 56.) Under that agreement, in exchange for Trujillo's plea and his waiver of appellate and collateral challenge rights, the government agreed to dismiss Counts 1 and 3 and to recommend that Trujillo receive acceptance of responsibility credits. (ECF No. 57.) The plea documents included the parties' estimate of Trujillo's guideline range. That estimate was that Trujillo would be a career offender whose guideline range would be 262-327 months. (ECF No. 57-1.) Following his plea, the Probation Office determined that the parties' estimate was correct. Trujillo was determined to be a career offender whose guideline range was 262-327 months. (ECF No. 63 at 6.) However, the Probation Office described Trujillo as a career offender because:

> The defendant was at least 18 years old at the time of the instant offense of conviction; **the instant offense of conviction is a felony that is a crime of violence**; and the defendant has at least two prior felony convictions of either a crime of violence or a

> controlled substance offense; therefore, the defendant is a career offender.

(ECF No. 63 at 5, emphasis added.) No objections were filed with respect to the Presentence Investigation Report ("PSR") by either party.

On July 23, 2025, Trujillo appeared for sentencing. At the outset of the hearing, the Sentencing Court[2] adopted the factual findings and guideline calculations from the PSR, announced the guideline range, and explained that Trujillo was a career offender "because you were at least 18 years old at the time of this offense, this offense is a crime of violence, and you have at least two prior felony convictions of either a crime of violence or a controlled substance offense." (ECF No. 82 at 6.) Promptly after doing so, the Sentencing Court turned to the issue of variance.

In advance of sentencing, Trujillo had filed a motion for a downward variance to a sentence of 156 months. (ECF No. 62.) Both the Probation Office and the government agreed that some variance was appropriate, but each recommended a lesser (and the same) variance – to a sentence of 220 months. The Sentencing Court announced that it would sentence within the "range" set by the parties' variance requests. (ECF No. 82 at 8.) After hearing from all counsel and Trujillo, the Sentencing Court imposed a sentence of 180 months. Judgment entered on July 28, 2025. (ECF No. 69.) Trujillo did not appeal.

On June 8, 2026, Trujillo filed the Original Motion. That motion contained six claims or grounds for relief. Much about the Original Motion is confused as most of it is based on the erroneous contention that Trujillo pleaded guilty to and/or was sentenced under the provisions of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). He did not and was not.

---

[2] This term is used to refer to the district court which presided over this matter through plea and sentencing prior to the reassignment of this matter to this Court.

Shortly after the Original Motion was filed, Trujillo came to realize that the Original Motion relied on the erroneous claim that the ACCA was applied in his case. On June 22, 2026, he filed Supplement 1, noting that he was sentenced as a career offender and not under the ACCA. Rather than amending the Original Motion, however, he instead simply added five new claims or grounds to it. These claims argued that Trujillo's counsel was ineffective for not challenging or resisting the application of the career offender guideline to Trujillo. What Trujillo emphasized was that the PSR (and the Sentencing Court through adoption) erroneously called his offense of conviction a crime of violence when it was not.

Still unsatisfied, on July 6, 2026, Trujillo filed Supplement 2. In this pleading, he added an additional four claims or grounds, bringing the cumulative total of claims or grounds for relief to fifteen. Supplement 2 repeated a claim of ineffective assistance for failing to challenge application of the career offender guideline. It then added a claim of involuntary plea, a claim raising a forfeiture issue, and a cumulative error claim.

On September 30, 2026, the government filed the Response. The government responded to most claims by noting that the career offender guideline was properly applied and calculated, notwithstanding any PSR error, because the offense of conviction was a controlled substance offense. Other claims were said to be refuted by the record or to be too vague and conclusory to constitute a valid § 2255 claim. As to all claims, the government argues that Trujillo has failed to demonstrate the requisite prejudice as he never claimed that but for the errors of counsel, he would have insisted on going to trial.

On October 26, 2026, Trujillo filed the Reply. The Reply made clear that Trujillo continues to pursue all fifteen claims raised. It also characterizes the claims as "fifteen claims of ineffective assistance of counsel." (ECF No. 88 at 1.) The Reply then all but abandons its plea-

based claims and asserts that its "primary claims" (identified as claims one, three, six, seven through twelve, and fourteen) are "sentencing-stage claims." (ECF No. 88 at 2.) The Reply reaffirms that Trujillo seeks "sentence-only relief" and "does not seek to withdraw his plea." (ECF No. 88 at 3.) Thereafter, it argued that the Response fails for three reasons: (1) the government applied the wrong prejudice standard to Trujillo's sentencing-stage claims; (2) the government, having labeled the offense of conviction as a "controlled substance offense," relied on an application note which "may not be binding" after *Kisor v. Wilkie*, __ U.S. __, 139 S.Ct. 2400 (2019) ("*Kisor*"); and (3) defense counsel's failure to challenge the PSR's improper categorization of the offense of conviction as a "crime of violence" constituted inadequate research tantamount to deficient performance.

## II. Analysis.

Many (the Reply claims all) of Trujillo's claims allege ineffective assistance of counsel. The Supreme Court has established a two-prong test to evaluate ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668 (1984) ("*Strickland*"). Trujillo must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance was prejudicial. *Id.* at 687. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* Counsel's performance must be more than merely "wrong" in some way. It must be "completely unreasonable." *Hoxsie v. Kerby*, 108 F. 3d 1239, 1246 (10th Cir. 1997). And in terms of prejudice, Trujillo must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. In a plea context, the defendant must show that but for the errors of counsel, there is a "reasonable probability" that he would have insisted on going to trial. *United States v.*

*Dominguez*, 998 F.3d 1094, 1111 (10th Cir 2021) ("*Dominguez*"); *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

**A. The Original Motion.**

The Original Motion contains six claims or grounds for relief. These claims are (i) ineffective assistance of counsel for failing to object to the use of the ACCA, failing to challenge Presentence Report's reliance on improper ACCA predicates, failing to advise Trujillo that the ACCA did not apply, failing to correct the Sentencing Court's reliance on a 262-327 month guideline range, and failing to file necessary motions and other pleadings addressing the ACCA error; (ii) involuntary plea due to inadequate and improper ACCA advisements by counsel; (iii) unlawful sentence as ACCA was improperly applied; (iv) ineffective assistance for failing to fully litigate motions; (v) ineffective assistance for failing to "clarify and preserve the plea posture, the consequences of the plea and the rights being waived;" and (vi) ineffective assistance for failing to challenge "guideline range, career offender treatment," explained simply as "improper reliance on dismissed charges."

The Court's analysis differs substantially from the government's with respect to the Original Motion. As noted earlier, the Original Motion was largely based on an erroneous assumption not initially recognized by Trujillo – the error being an assertion that he had been sentenced under the ACCA or Armed Career Criminal Act. After coming to realize his error, Trujillo filed Supplement 1 and Supplement 2 which put forth other claims based on the actual framework used in his sentencing – the career offender guideline. Yet, the Response overlooks Trujillo's concession and seemingly conflates career offender and ACCA statuses by declaring, "Counsel, the Government, the Probation Office, and this court all agreed that Trujillo Bransford

was a career offender under the Armed Career Criminals Act (ACCA)." This statement is too broad and both factually and legally incorrect.

"Career offenders" and "armed career criminals" are not the same. Neither is "under" or derived from the other. These status labels are separate terms of art. Career offender status is a creation of the guidelines. It utilizes U.S.S.G. § 4B1.1 to determine both application rules and the guideline range. Persons only convicted of § 922(g) violations cannot be career offenders as such offenses are not crimes of violence or controlled substance offenses. Armed career criminal status is the product of a statutory enhancement to § 922(g) punishments found at 18 U.S.C. § 924(e). It carries a mandatory minimum sentence of 15 years[3] and utilizes U.S.S.G. § 4B1.4 to determine the guideline range. Persons only convicted of § 924(c) violations cannot be armed career criminals.

Treating the Original Motion as raising career offender claims is misinterpreting the Original Motion. Trujillo has admitted as much. While the government is correct in its evaluation and treatment of the career offender issues, such issues are not ones raised by most claims in the Original Motion. Accordingly, the proper calculation of the career offender guideline is not responsive to the bulk of the Original Motion. The Court proceeds with the Original Motion's claims as actually stated. The Court is under no obligation to and will not rewrite those claims for Trujillo contrary to the express language of the claims. Particularly when Trujillo was provided with the opportunity (twice) to supplement.[4]

[3] The Court considers it likely that the Sentencing Court's imposition of a fifteen-year sentence is what led Trujillo to believe (for a time) that he had been sentenced under the ACCA.

[4] As noted, career offenders and armed career criminals have different punishment structures and utilize different guidelines. They also require both a different number of qualifying prior convictions (two for career offender and three for armed career criminal) and different types ("crime of violence" or "controlled substance offense" for career offender and "violent felony" or "serious drug offense" for ACCA). Different advice and advisements are required for each. It is not the case that one can simply substitute status label names without altering the meaning of the claims.

**Failure to object to use of ACCA.** This claim fails for a simple reason. Trujillo was not sentenced as an armed career criminal. The ACCA had nothing to do with the offense of conviction or with the sentence imposed. (*See*, *generally*, ECF Nos. 63 and 82.) As noted earlier, Trujillo was sentenced as a career offender – not an armed career criminal. Counsel's performance was not deficient for failing to object to legal concepts that were not applied and which had no bearing on Trujillo's sentence.[5] While prejudice will be discussed in more detail below, it is readily apparent that no prejudice is established by counsel's "failures." If the totally irrelevant challenges were made, there is no reasonable likelihood that Trujillo's sentence would have been different.

**Involuntary and Unknowing Plea.** Again, Trujillo's mistaken belief as to use of the ACCA undermines the bulk of this claim. Trujillo claims that he was not advised by counsel as to his actual sentence exposure, statutory maximum, inapplicability of the ACCA, the lack of a guideline range for § 924(c), and that there is no legal basis for ACCA enhancement of a conviction under § 924(c).[6] Further, he claims that his plea was "coerced" by potential ACCA level penalties. In addition to the erroneous ACCA basis for many of its allegations, much of this claim is clearly contradicted by the record in this case.

[5] Of Trujillo's various subparts to this claim, only one may be independent of his erroneous claim that the ACCA was applied. Trujillo claims that counsel was ineffective for failing to correct the Sentencing Court's use of guideline range of 262–327 as that range is "impossible for a § 924(c) conviction." Even if this subpart is viewed as being independent of ACCA allegations, it remains completely meritless. The 262–327 guideline range is the proper one for a defendant who pleads to a § 924(c), is a career offender, and receives acceptance credits. U.S.S.G. §4B1.1(c)(3). The Response correctly lays out the career offender guideline calculations. The Court agrees with the government that 262–327 is the appropriate range for a § 924(c) career offender like Trujillo. Accordingly, counsel's lack of objection was not deficient performance. To the extent that Trujillo may argue that 262–327 is not an appropriate ACCA calculation, he is presumably correct. An ACCA calculation would use a different guideline and likely yield a different calculation. But as noted, Trujillo was not convicted of an ACCA offense.

[6] Trujillo makes clear that he complains of counsel's failure to advise as being the cause or basis for Trujillo's plea being unknowing and involuntary. His claim is thus a species of ineffective assistance and not a claim of structural error with respect to his plea. The Reply admits as much.

To the extent Trujillo claims that he was not advised of his sentence exposure and the statutory maximum, his allegation is demonstrably false. His Statement by Defendant in Advance of Plea of Guilty advised him of the correct statutory minimum (5 years) and maximum (life). (ECF No. 58 at 2.) His plea agreement correctly stated the statutory maximum and minimum as well. (ECF No. 57 at 5.) And then, in terms of the Guidelines, his plea agreement projected that Trujillo would be a career offender who faced a guideline range of "**262 to 327 months.**" (ECF No. 57-1, emphasis in original.) At his change of plea hearing, Trujillo told the Sentencing Court that he had reviewed these documents and had adequate time to do so. (ECF No. 81 at 11.) The following exchange occurred next:

> THE COURT: As you sit here today, is there anything in either document that you feel you don't sufficiently understand?
>
> THE DEFENDANT: No, not that I can think of.

(ECF No. 81 at 11.) Following this, he was again advised of the proper statutory maximum and minimum by the prosecutor. (ECF No. 81 at 14.) Next, the Sentencing Court advised Trujillo of these penalties. (ECF No. 81 at 15.) Finally, the Sentencing Court advised Trujillo about the parties' guideline projection:

> THE COURT: …The parties have made a preliminary estimate of what the sentencing guideline range is going to be for you. That range they've estimated to be 262 to 327 months. And because you were turning around to see family maybe, I'm going to say it again so you know the range that's estimated is 262 to 327 months. That's a lot of months.
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: That could change. That could even go higher, and I need you to understand that… Do you understand that?
>
> THE DEFENDANT: Yes, I do.

(ECF No. 81 at 20-21.) The allegation of lack of a proper advisement (from counsel, the Sentencing Court, or otherwise) could not be more wrong.

The same is true of the coercion component of the claim. To begin, it is somewhat unclear what Trujillo actually means. The most rational interpretation would be that he was told that he would face an ACCA conviction and its 15-year mandatory minimum on Count 3 if he did not agree to plead to Count 2, and that this threat of ACCA treatment is what his attorney used to "coerce" him to plead.[7] But this interpretation, while perhaps a logically reasonable one, makes no sense in the context of the Original Motion. The Original Motion operates on the basis of an erroneous belief that the ACCA was in fact used against Trujillo, not on an allegation that the ACCA would be withheld if he pleaded guilty.

Regardless of the logic, the claim of coercion by counsel (regardless of how it correlates to the ACCA) is baseless. It consists solely of a brief, conclusory sentence that "Movant was told he faced ACCA level penalties, which coerced his plea." First, this allegation is too general and conclusory to support a § 2255 claim. It is unclear what Trujillo means by "ACCA level penalties"[8] or how such exposure influenced his plea. Second, Trujillo's allegation is refuted by the record.

In his Statement by Defendant in Advance of Plea of Guilty, Trujillo represented that "no threats of any sort have been made to me by anyone to induce me or to persuade me" to plead guilty. (ECF No. 58 at 7.) Similarly, while under oath at his change of plea, Trujillo engaged in the following exchange:

---

[7] The Criminal Information Sheet filed with the indictment does suggest the possibility of an ACCA sentence with respect to Count 3 by advising that "if the sentencing enhancement in 18 U.S.C. § 924(e) applies," then the imprisonment penalty would be "NLT 15 years' imprisonment."

[8] If by "ACCA level penalties," Trujillo means exposure to a maximum of life, any advice as to life exposure would have been accurate. A § 924(c) conviction carries a maximum imprisonment term of life.

> THE COURT: All right. So other than what's in the agreement and what we've talked about, has anybody offered you or given you anything to get you to plead guilty today?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anybody threatened you in any way?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you doing this of your own free will?
>
> THE DEFENDANT: Yes, I am.
>
> *** *** ***
>
> THE COURT: All right. So let me ask you, do you still wish to plead guilty to Count 2?
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Are you doing this of your own free will?
>
> THE DEFENDANT: Yes, I am.

(ECF No. 81 at 23, 25.)

Based on his entire colloquy, which included Trujillo asking questions to confirm the non-binding nature of the Guidelines (ECF No. 81 at 24), the Sentencing Court concluded:

> I find he's competent to enter this plea of guilty today. I believe his plea is made knowingly, voluntarily, and intelligently. I find that his plea is not the result of fear, mistake, coercion, or any type of undue influence.

(ECF No. 81 at 26.) Trujillo voiced no disagreement.

The Court is entitled to rely on Trujillo's sworn statements. They, not his subsequent self-serving declaration of coercion, are entitled to the presumption of truth. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). "[T]he truth and accuracy of a defendant's statements during the Rule 11 proceeding should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the

apparent truth of his Rule 11 statements." *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011) (cleaned up). Trujillo has, and has expressed, no "believable, valid reason."

**Unlawful Sentence: ACCA Was Applied.** It was not applied. Nothing more need be said.[9]

**Ineffective Assistance for Failure to Fully Litigate Motions.** According to Trujillo, motions were potentially "case dispositive" and should have been fully litigated before he was advised to plead guilty. Counsel's performance in terms of motions was not deficient.

Counsel filed motions to suppress evidence and statements, for discovery, and for disclosure of the identity of the confidential informant. (ECF Nos. 41-44.) The government responded by indicating that it did not intend to use Trujillo's statements and that Trujillo was not entitled to the identity of the informant as he/she was not a witness or actor with respect to the charges actually filed[10]. The government indicated that Trujillo was not entitled to the discovery he sought. And the government strongly resisted suppression of the guns, drugs and other evidence found in Trujillo's home and property pursuant to a federal search warrant. (ECF Nos. 49-52.) Nine days later, a notice of disposition was filed.

To the extent that defense counsel simply used whatever uncertainty was created by the motions as leverage in plea negotiations, that is (in the ordinary case) the epitome of a strategic decision which is "virtually unchallengeable." *Strickland* at 690. This conclusion would not be a proper one, however, if the motion was likely meritorious and potentially dispositive.

---

[9] However, it is also the case that this claim can be read as a substantive challenge to Trujillo's sentence. If so, it is subject to the collateral challenge waiver contained in his plea agreement. (ECF No. 57 at 3.) Under the waiver, the only permitted challenges are for reductions based on retroactive guidelines or statutes, for ineffective assistance of defense counsel, and for prosecutorial misconduct. The *Hahn* factors (scope, knowing and voluntary waiver, miscarriage of justice) do not weigh against enforcement of the waiver in this case. Nor has Trujillo even addressed these factors.

[10] The informant was involved in a one-pound methamphetamine purchase from Trujillo which was part of the probable cause later used to obtain a search warrant. The filed charges did not include that purchase.

The Court has reviewed the filed motions and the responses. The only motion which could potentially be dispositive was the motion to suppress the evidence found in the search of Trujillo's home and property. That motion generally raised probable cause and lack of particularity. But having reviewed the relevant filings, the Court concludes that the motion to suppress was not meritorious and unlikely to have been granted. Apart from the facial validity of the warrant, Trujillo had no obvious answer to the good faith exception under *United States v. Leon*, 468 U.S. 897, 920-24 (1984). Counsel's decision to negotiate a plea to Count 2 rather than weaken Trujillo's hand by pursuing and losing on the motions was far from deficient performance. This is especially true where a plea to Count 2 (even with career offender status) carried a lesser guideline range than a plea to Count 1, the drug count.[11]

In any event, Trujillo was obviously aware that the motions were not being litigated, and he agreed with that decision. At his plea, the Sentencing Court asked and Trujillo responded as follows:

> THE COURT: You are here with Ms. Casper today. Are you satisfied with her representation of you?
>
> THE DEFENDANT: Very, yes.
>
> THE COURT: Is there anything you feel she should have done on your behalf but did not do?
>
> THE DEFENDANT: No.

(ECF No. 81 at 8.)

[11] Had Trujillo pled to Count 1 alone, his guideline range would have been 360-life. This would be the outcome of a base offense level of 38 (more than 4.5 KG of actual methamphetamine), plus 2 for possession of a dangerous weapon, minus 3 for acceptance for a total offense level of 37 and a criminal history category of VI. This would be the guideline range both with and without application of the career offender guideline. (*See* ECF No. 63 at 3-4, 12 for drug amounts and criminal history points.)

Trujillo presents nothing to substantiate his claim that the filed motions were dispositive in any way beyond a speculative possibility. Nor does he demonstrate that the motions were meritorious. He never claims that he did not understand that they were being abandoned by pleading guilty.

The Response argues simply that the claim is too conclusory to constitute a valid § 2255 claim as it fails to identify the issues, how they should have been litigated, and how the failure to do so impacted Trujillo's case. To the extent Trujillo refers to matters beyond the motions as actually filed, the Court agrees with the government. As to the motions actually filed, the Court has found them likely to be denied and/or non-dispositive. In light of this, Trujillo's unsupported and unreasoned claim that they should have been further pursued does not establish deficient performance of counsel or establish prejudice.

**Ineffective Assistance for Failure to Preserve "Plea Posture," Consequences and Rights Waived.** This vague and general claim is supported by a single sentence. "Movant was deprived of constitutionally effective advice before guilty plea by counsel." (ECF No. 73 at 8.) The specific meaning of the claim is not at all clear. It is a conclusory statement devoid of any specific facts. It fails to support a claim of ineffective assistance as its vague and general nature precludes meaningful understanding or analysis. Conclusory allegations as to ineffective assistance are inadequate support for a 2255 motion. *See, e.g., United States v. Moser*, 570 Fed. Appx. 800, 802 (10th Cir. 2010) (unpublished) (rejecting "petitions that refer in conclusory fashion to failures of trial counsel...").[12]

[12] The Response interprets this claim as perhaps suggesting that Trujillo was inadequately advised as to the consequences of his plea. Even if so interpreted, the claim fails. As set forth throughout this Order, the record reflects that the guidelines were correctly calculated and that Trujillo was properly advised. (*See*, ECF 57, 58, and 81.)

**Ineffective Assistance for Failure to Challenge Guideline Range, Career Offender Treatment.** Although this claim seems to shift away from ACCA allegations, the claim is little more than a declaration supported by a single sentence. "Counsel failed to challenge improper reliance on dismissed charges." The meaning of the claim is entirely unclear in the Original Motion. The Original Motion identifies no "reliance" on dismissed charges. Nor does Trujillo explain why any alleged reliance was improper. Like the prior claim, this claim – as it is set forth in the Original Motion – is too conclusory and too lacking in factual specifics to establish ineffective assistance.[13]

B. **Supplement 1**.

Supplement 1 begins with an acknowledgement that "I mistated (sic) the enhancement in which I was sentenced under." (ECF No. 76 at 1.) But rather than correcting, amending or withdrawing the allegations of the Original Motion, Supplement 1 simply adds five additional claims.

**Ineffective Assistance for Failure to Object to 4B1.2(a)(1). Ineffective Assistance for Failure to Object to 4B1.2(a)(2). Ineffective Assistance for Failure to Challenge Conduct Specific Inquiry.** The first three claims of Supplement 1, Claims Seven, Eight and Nine, are grouped together as they each allege (under different theories) that counsel was ineffective for failing to challenge the PSR's improper characterization of Trujillo's § 924(c) conviction as a crime of violence. Trujillo contends that he was not convicted of a crime of violence. Trujillo is entirely correct. And his offense should not have been so characterized.[14] However, his offense

[13] A similar and perhaps clarifying claim is made in Supplement 1. If the claim in the Original Motion is meant to have the same basis as the "dismissed count" claim made in Supplement 1, then the substantive analysis of that claim is incorporated by reference and applied to this claim.

[14] As previously noted, in its career offender discussion, the PSR did state that "the instant offense of conviction is a felony that is a crime of violence." (ECF No. 63 at 5.) No objections were filed. The Sentencing Court did "adopt the factual statements and the guideline applications" at sentencing. (ECF No. 82 at 6.)

of conviction (18 U.S.C. § 924(c)) was a "controlled substance offense." As such, Trujillo was still properly a career offender.

U.S.S.G. § 4B1.3, n. 1, provides that "[a] violation of 18 U.S.C. § 924(c) is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense."" Trujillo was convicted of possession of a firearm in furtherance of Count 1, a felony "controlled substance offense." He specifically pleaded and admitted to furthering Count 1. (ECF No. 57 at 7.) Therefore, Trujillo's § 924(c) conviction was a controlled substance offense. It qualified for career offender treatment under § 4B1.1(a)(2) as "the instant offense of conviction is a felony that is **either** a crime of violence or a controlled substance offense." (Emphasis added.) The Response is entirely correct: "Trujillo Bransford qualified as a career offender because his § 924(c) conviction was a controlled substance offense and he had previously been convicted of two crimes of violence (both for Colorado second-degree assault)." (ECF No. 87 at 4.)

Trujillo argues to the contrary in the Reply. According to Trujillo, reliance on this guideline commentary or application note is improper as such reliance "may not be binding under the post-Kisor framework." (ECF No. 88 at 4.) Trujillo claims that counsel should have corrected the crime of violence error. In not doing so, he argues that he:

> was deprived of the opportunity to challenge the "controlled substance offense" theory at sentencing. If the PSR had identified that theory, Movant could have argued that Application Note l's expansion is not binding under *Stinson* and *Kisor.*

(ECF No. 88 at 5.)

This argument lacks merit. The suggestion that something "may not be binding" is hardly adequate given that Trujillo bears the burden of proof to establish constitutionally ineffective assistance. That aside, Trujillo's *Kisor* argument fails and has failed since 2023.

Simplifying matters, before *Kisor*, courts generally deferred to executive agencies' construction and interpretation of their own rules and regulations. In *Kisor*, a civil case, the Supreme Court turned away from such deference and adopted a robust test for when courts could defer to executive agency interpretations. In broad terms, *Kisor* greatly reduced the circumstances in which agency interpretations were entitled to judicial deference. And, in the wake of *Kisor*, many courts began to accept a specific argument proffered by defense counsel in criminal cases – that *Kisor* abrogated an earlier Supreme Court case (*Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("*Stinson*")) which had held guideline commentary to be entitled to controlling weight. In *Stinson*, the Supreme Court upheld the Sentencing Commission's use of commentary to interpret Guideline provisions by imprecise analogy to agency rule making authority and interpretation. *Kisor* abrogated *Stinson*, the argument went, by changing the rules of executive agency deference which had been in existence at the time *Stinson* was decided.

Although not clearly laid out, this is the argument that Trujillo refers to in the Reply to suggest that U.S.S.G. § 4B1.3, n. 1, "may not be binding" and to assert prejudice in the form of being deprived of the opportunity to make the *Kisor* argument when defense counsel failed to object to the PSR's labeling of Trujillo's offense of conviction as a "crime of violence." Had counsel objected, the Court would have correctly labeled the offense of conviction as a "controlled substance offense" which would have enabled Trujillo to fully resist career offender treatment by proffering the *Kisor* argument.[15] Or so Trujillo claims. But he is wrong.

[15] Presumably, and for reasons both unexplained and unknown, Trujillo seemingly suggests (through the structure of argument in the Reply) that the *Kisor* argument could not be raised or would not be effective until the Sentencing Court classified the offense of conviction as a controlled substance offense. As *Stinson* dealt specifically with commentary interpreting the guideline term "crime of violence," such a position appears odd.

In 2023, the Tenth Circuit took on the claim that *Kisor* abrogates *Stinson*. The Tenth Circuit squarely rejected this claim. In *United States v. Maloid*, 71 F.4th 795 (10th Cir. 2023) ("*Maloid*"), the Tenth Circuit stated the following with respect to Sentencing Commission's interpretation of guideline provisions through commentary:

> Because judicial agencies are different, we cannot say that *Kisor* meant for its new standard—crafted entirely in the context of executive agencies—to reach the Commission. As applied to the Commission, *Kisor* merely recognizes what the Court made clear in *Stinson*: the analogy between the Guidelines' commentary and executive interpretations is "not precise because Congress has a role in promulgating the guidelines." *Stinson*, 508 U.S. at 44, 113 S.Ct. 1913. We will not compound that imprecision by expanding *Kisor* to the Commission.

(*Maloid* at 807-08.) The opinion concluded, "*Kisor* did not change the standard of deference we give to the Guidelines' commentary." (*Maloid* at 817.)

Three months later, in *United States v. Coates*, 82 F.4th 953 (10th Cir. 2023) ("Coates"), the Tenth Circuit was even more explicit. "*Kisor* does not apply to sentencing guideline commentary and the *Stinson* standard controls." (*Coates* at 956-57.)

Before Trujillo was ever indicted, the *Kisor* argument upon which Trujillo now relies was rejected by the Tenth Circuit. Trujillo cannot now use *Kisor* to resist the effect of guideline commentary or to generate some form of prejudice caused by counsel's failure to lodge an objection to the PSR's erroneous, but unimpactful, description of the offense of conviction.

Correcting the PSR would certainly have been preferable, but it would not have changed the sentencing proceedings in any meaningful way. Objecting to the erroneous crime of violence characterization would have accomplished nothing that would change application of the career offender guideline. Moreover, Trujillo has presented no reasonable likelihood that the variant sentence which Trujillo received was longer than it would have been if the "non-violent" nature

of the offense of conviction was properly acknowledged. He does not even attempt to construct such an argument. Instead, he relies solely on *Kisor*.

The record does not demonstrate that the PSR error affected anything in terms of the actual sentence imposed. Without directly acknowledging the PSR's error, at sentencing, the government made clear that it was not claiming that Trujillo's § 924(c) offense involved any actual violence:

> [I'm] not saying that there's obviously any violence here -- that's certainly not my -- I'm not trying to make that even an insinuation -- but he's armed himself.

(ECF No. 82 at 18.) And, in a lengthy explanation for imposing the sentence that it did, the Sentencing Court at no point referenced any presumed violent characterization of the offense of conviction as a basis for the sentence. (ECF No. 82 at 27-32.) Trujillo does not claim that his 180-month sentence was imposed, in whole or in part, based on a perception or characterization of Trujillo's § 924(c) offense as being itself violent. His sole focus is on invalidating the career offender guideline so that U.S.S.G. § 2K2.4(b) would set the guideline range for a § 924(c) offense at 60 months. But the career offender guideline was the correct guideline in this case. It is Trujillo who bears the burden to show otherwise. He has failed to meet his burden, and no other form of prejudice has been argued or found.

**Ineffective Assistance for Failure to Object to 4B1.2(b).** Here, Trujillo claims that counsel was ineffective for failing to challenge any characterization of the offense of conviction as a "controlled substance offense." As explained above, his attempt to distance his offense of conviction from specific guideline commentary which would make it a "controlled substance offense" fails at every turn. Nonetheless, Trujillo makes additional arguments.

Trujillo contends that his § 924(c) conviction is not a "controlled substance offense" as a "controlled substance offense" must prohibit the manufacture, import, export, distribution or dispensing of a controlled substance or the possession of a controlled substance" with intent to do the same. Trujillo claims that the elements of his count of conviction do not require commission of any of the prohibited conduct. Thus, his § 924(c) conviction is not a "controlled substance offense" as defined in U.S.S.G. § 4B1.2(b). His offense, he argues, is simply a firearms offense. He further argues that Count 1 cannot be used to support career offender status as Count 1 was dismissed and "cannot be used to support the application of the Career Offender Guideline." He is simply wrong. And because he is wrong, counsel did not engage in deficient performance in failing to object.[16]

The Court begins with U.S.S.G. § 4B1.2(b). That subsection does define "controlled substance offense" in the terms quoted by Trujillo. But, as noted previously, he ignores Application Note 1 which provides in pertinent part:

> —For purposes of this guideline—
>
> A violation of 18 U.S.C. § 924(c) … is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense".

Guideline notes and commentary are generally authoritative. *United States v. Linares*, 67 F.4th 1085, 1091 (10th Cir. 2023) (reaffirming *Stinson*). *Kisor*, as set forth above, does nothing to change this.

Application notes aside, to the extent Trujillo seeks to rely on the argument that his offense of conviction does not rely upon or contain any controlled substance conduct,

---

[16] The notion that counsel was ineffective for not objecting to something that was not said, found, or argued seems a bridge too far in any event.

his argument plainly fails. In Trujillo's case, the controlled substance conduct of Count 1 was clearly identified in the count to which Trujillo pleaded guilty (Count 2). Trujillo's count of conviction reads:

> COUNT 2
>
> On or about May 29, 2024, in the State and District of Colorado, the defendant, DONALD TRUJILLO BRANSFORD, did knowingly possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely the offense charged in Count 1. All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

(ECF No. 13 at 1-2.)

Count 1 was the underlying offense on which the § 924(c) was based. The offense charged in Count 1 was possession "with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine" in violation of 21 U.S.C. § 841(a)(1). (ECF No. 13.)

Trujillo tries to avoid this difficulty by claiming, essentially, that the *elements* of his § 924(c) conviction do not require any prohibited drug conduct. But they do, and he was told so. His plea agreement set forth the elements as follows:

> First: The defendant committed the crime of Possession of Intent to Distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, which is a drug trafficking crime;
>
> Second: The defendant possessed a firearm in furtherance of this crime.

(ECF No. 57 at 5.) He was advised of these same elements at his change of plea. (ECF No. 81 at 13.) These elements are those set forth in Tenth Circuit Pattern Criminal Jury Instruction No. 2.45.1 (2026).

Trujillo's final effort to resist classification of his § 924(c) conviction as a controlled substance offense is to argue, with no supporting authority, that since Count 1 was dismissed, it cannot be used to support a controlled substance characterization.[17] Here, Trujillo is simply making up law.

The underlying controlled substance offense does not have to be one for which Trujillo sustained an actual conviction in federal court. In fact, it does not even have to be separately charged. What § 924(c) prohibits is the conduct of "any person who, during and in relation to any … drug trafficking crime for which the person **may be prosecuted** in a court of the United States,[18] uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A) (Emphasis added). Trujillo's unsupported claim that the underlying crime also must be an offense of conviction is wrong. The underlying crime simply has to be one for which he "may be" (meaning "could be") prosecuted. Nowhere does the statute mention, much less require, *conviction*. Trujillo must have factually committed the underlying offense, and that offense must be one for which he "may be" prosecuted, but he need not have sustained a conviction for that underlying offense in order to plea. And so, the fact that Count 1 was dismissed at sentencing (after the plea was accepted) pursuant to Trujillo's plea agreement means nothing.

Counsel did not engage in deficient performance by failing to raise a legally meritless objection to Trujillo's career offender classification based on his conviction being a controlled substance offense. And again, there is no prejudice.

**Ineffective Assistance for Failing to Object to Career Offender Designation.** The final claim in Supplement 1 is nothing more than a summary of Trujillo's earlier claims. Trujillo argues that since his § 924(c) conviction was neither a crime of violence nor a controlled

---

[17] This argument is the one referenced in note 12, above.
[18] This term is statutorily defined to include the states of the United States. 18 U.S.C. § 925(a)(5).

substance offense, counsel should have objected. As this Court has determined that Trujillo's conviction was a controlled substance offense within the meaning of the Guidelines, his allegation of ineffectiveness fails. Counsel's failure to object was wrong. But not so "completely unreasonable" as to constitute constitutionally deficient performance in the context of this case.[19] Even if so considered, as noted, Trujillo has not carried his burden as to prejudice.

**C. Supplement 2.**

Supplement 2 contains Trujillo's final four claims. Unsurprisingly, Trujillo treads on well-worn ground.

**Ineffective Assistance for Failure to Object to § 4B1.1**. This claim does nothing more than repeat the various claims raised in Supplement 1. Trujillo again claims, for the same reasons as previously stated, that he cannot be a career offender and that counsel should have objected to his being classified as such. For the reasons stated in the discussion of Supplement 1, Trujillo is wrong. Counsel's performance was not constitutionally ineffective assistance, and Trujillo has not established prejudice.

**Unknowing and Involuntary Plea**. This claim is based wholly on allegedly inadequate advice of counsel. The claim as stated in Supplement 2 is, however, nothing short of complete fiction. Trujillo plainly misstates the facts. He claims that his plea was involuntary because

[19] In the Original Motion, among the many arguments Trujillo makes is one that his prior second-degree assault convictions cannot be used as ACCA predicates because the Colorado second-degree assault statute is overbroad. (*See* ECF No. 73 at 6.) Trujillo notes that under *Borden v. United States*, 593 U.S. 420, 141 S.Ct. 1817 (2021), reckless use of violent force is not a "violent felony." What appears to be his argument is that because C.R.S. § 18-3-203(1)(d) criminalizes "recklessly caus[ing] serious bodily injury to another," Colorado's second-degree assault statute as a whole is overbroad, and neither of Trujillo's two prior second-degree assault convictions can be treated as a predicate "violent felony" under the ACCA. To be clear, Trujillo does not bring this argument forward into his challenge to his career offender classification and adjust it accordingly. But assuming that his collective pleadings were to be viewed as if Trujillo had done so, and further assuming that his claim would be that Colorado second-degree assault is not a "crime of violence" for the reasons stated, his claim would still be without merit. Colorado's second-degree assault statute is divisible, and the subsections under which Trujillo was convicted (C.R.S. § 18-3-203(1)(b) and (1)(i)) require specific intent – not recklessness. No other challenge has been raised.

counsel did not advise him "that the court could seek to classify him as a career criminal under USSG § 4B1.1, resulting in an advisory guideline range of 262-327-months."

The plea agreement signed by Trujillo and his attorney states:

> a) The parties agree that the defendant is a career offender pursuant to § 4B1.1(a). Because the only count of conviction is 18 U.S.C. § 924(c), the applicable guideline range is determined by § 4B1.1(c)(3).
> b) Assuming the defendant does not engage in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1 .1, comment (note 4) between the time of his guilty plea and sentencing, the defendant has clearly demonstrated acceptance of responsibility and therefore should receive a 3-level downward adjustment for timely acceptance of responsibility. Section 3E1 .1. The resulting advisory guideline range is **262 to 327 months.**

(ECF No. 57-1, emphasis in original.) Neither pictures nor hand puppets could have made this more clear.

Trujillo's claim is meritless. Counsel was not deficient in her advice.

**Ineffective Assistance and Incorrect Forfeiture Language.** Trujillo claims that the forfeiture language of the plea agreement was overbroad, that counsel should have objected, and that counsel should have sought the return of money and property which was not properly forfeited. He claims in the Reply that property related to the drug count, specifically $16,808.26 in United States currency, was forfeited. He learned of this through "the public record."[20] Trujillo argues that this money relates to Count 1 only and should not have been forfeited. The Court has four responses.

First, for the reasons discussed above, Trujillo's drug proceeds are not unrelated to Trujillo's count of conviction.

[20] It is not clear what public record Trujillo refers to as being the source of his knowledge. The Court assumes it was some form of notice or publication associated with a civil or administrative forfeiture.

Second, the claim that counsel should have objected to any plea agreement forfeiture language tied to Count 1 is misplaced. There was no such language. The plea agreement identified the criminally forfeitable property as a specific firearm (a Glock) and ammunition possessed by Trujillo. (ECF No. 57 at 4.)

Third, whatever ultimately happened or did not happen by way of monetary forfeiture is not a matter of concern for this Court. No criminal forfeiture was imposed. That is why there is, as the Motion correctly notes, no forfeiture specification in the judgment. Prior to sentencing, on July 2, 2025, the United States advised the Sentencing Court that it was not seeking criminal forfeiture. (ECF No. 61.) Thereafter, nothing happened in the criminal case regarding forfeiture. All of Trujillo's arguments about preliminary and final orders of forfeiture in the criminal case are misplaced. To the extent that any monetary forfeiture occurred, it was a civil or administrative forfeiture outside of the criminal case. As such, there was no deficient performance by counsel in the criminal case.

Fourth, forfeiture is beyond the scope of § 2255 proceedings in any event. The statute, 28 U.S.C. § 2255(a), provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Nothing about this creates some avenue for relief under § 2255 from the monetary collateral consequences of a conviction such as forfeiture. Especially civil or administrative forfeiture.

Trujillo's forfeiture claim has nothing to do with his custodial sentence or any request to be released from such sentence. In general, and particularly where Trujillo attempts to crowbar a

motion for return of property into his fourteenth claim, forfeiture claims are not cognizable in § 2255 proceedings. *See*, *United States v. Murphy*, 132 F.3d 44 (10th Cir. 1997) (unpublished) (2255 does not apply to civil forfeiture). *See also*, *United States v. Satterfield*, 218 Fed.Appx. 794, 796 (10th Cir. 2007) (unpublished) (same reasoning applied to restitution).

Dressing forfeiture up in the clothing of "ineffective assistance" changes nothing. The claim is outside the scope of and without merit as a § 2255 claim.

**Ineffective Assistance – Cumulatively.** For his fifteenth and final claim, Trujillo simply argues that all of the previously alleged errors of counsel combine to create ineffective assistance. They do not. As discussed above, counsel's performance was not constitutionally deficient. But if any cognizable error was made, it was but a single one – failing to correct the PSR. That error has not been shown to have had an impact on sentencing. Alone or in combination, Trujillo's claims do not rise to the level of constitutionally ineffective assistance.

### D. Prejudice.

Prejudice has been touched upon at times throughout earlier sections of this Order. It merits some additional discussion.

Across his various claims, Trujillo makes one thing perfectly clear. He does not want to vacate the conviction on Count 2. He does not want to proceed to trial. "Movant respectfully requests … resentencing to the lawful statutory minimum of 60 months." (Original Motion at 10.) "Movant does not challenge the Count 2 conviction." (Supplement 2 at 6.) "The proper remedy is … resentencing." (Supplement 2 at 7.) "Movant … does not seek to withdraw his guilty plea." (Reply at 2.) "Movant does not seek dismissal of Count 2, reinstatement of dismissed counts, or withdrawal of his guilty plea." (Reply at 11.) This position impacts several of Trujillo's claims.

For ineffective assistance claims, *Strickland* requires that Trujillo establish both deficient performance and prejudice. In the plea context, where the defendant has pleaded guilty, it is required that he show that but for the errors of counsel, there is a reasonable probability that he would have proceeded to trial. (*Dominguez* at 1111.)

In the Response, the government argues that Trujillo cannot satisfy *Strickland's* prejudice prong in light of the fact that he does not even claim that he would have gone to trial but for the errors of counsel. The Reply asserts that all of the claims in the Motion are ineffective assistance claims and that the government's position is too broadly stated. Trujillo argues that the "proceed to trial" requirement is one which applies *in the plea context* and not with respect to errors of counsel occurring only during post-plea sentencing stages.

The Court agrees with Trujillo that pure sentencing-based claims of error do not require that defendant establish that but for the error, defendant would have proceeded to trial. Otherwise, in plea cases, substantial errors of counsel only occurring post-plea and directly affecting a defendant's imprisonment term would often be insulated from § 2255 relief. But in staking out his position, Trujillo never challenges the correctness of the government's position as it pertains to his plea-based claims. And he cannot.

Trujillo identifies claims one, three, and six of the Original Motion, claims seven through twelve of Supplement 1, and claim fourteen of Supplement 2 as his "primary" and "sentencing-stage claims." His silence as to the other claims is deafening. All plea-based claims and sub-claims[21] [22] lack prejudice.

---

[21] As a sub-claim example, claim fourteen (forfeiture) includes an allegation that counsel failed "to object to incorrect overbroad forfeiture language." Claim fourteen also claims that counsel "should have objected to any forfeiture language that exceeded the count 2 conviction." The Sentencing Court did not impose forfeiture. To the extent any forfeiture language exists at all, it is part of Trujillo's plea agreement.

[22] For a further sub-claim example, claim one contains as one basis for relief an allegation that counsel failed to properly advise Trujillo as to the ACCA. Trujillo claims that had he been properly advised, he "would not have accepted the plea as written." This basis is a plea-based claim. And simply saying that he would not have accepted

As for Trujillo's primary or sentencing-stage claims (apart from the forfeiture claim), they all seek (or mean to seek) to invalidate Trujillo's classification as a career offender under the Guidelines. As noted earlier, Trujillo does not argue that the erroneous characterization of his offense as a crime of violence had any impact on the actual sentence imposed beyond the effect of having the career offender guideline (rather than § 2K2.4) establish the initial starting point of the sentencing analysis. But Trujillo is a career offender notwithstanding the PSR's error. The correct guideline and guideline range were used (and varied from) at sentencing. Finally, what Trujillo argues, in addition to the matters discussed above, is that the government cannot now change positions on career offender justifications after sentencing is completed. But the fact that Trujillo is properly classified as a career offender means that he has suffered no meaningful prejudice by the government's failure (like that of defense counsel) to correct the PSR. It is wholly proper for the government to argue a lack of prejudice. The fact remains that the only prejudice that Trujillo has sought to rely upon (incorrect guideline range) is a contention without merit.

As for the forfeiture claim, any forfeiture was not a part of the criminal sentence. Forfeiture relief is not a proper § 2255 request in any event.

**III. Conclusion.**

What Trujillo wants is to self-sentence to a bare minimum § 924(c) sentence of 60 months. He is not entitled to such relief. The Motion lacks merit. And Trujillo has failed to meet his burden.

---

the plea agreement "as written" falls well short of demonstrating a "reasonable probability" that Trujillo would have insisted on trial.

This matter can be and is conclusively resolved on the basis of the Motion, the Response, the Reply, and the files and records of the case. As a result, no hearing is required. For all of the reasons set forth above,

IT IS HEREBY ORDERED:

That the Motion (ECF Nos. 73, 76 and 79) is DENIED;

That no basis exists on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

That it is certified that any appeal from this Order is not taken in good faith, therefore, *in forma pauperis* status is denied for purposes of any appeal.

DATED this 5th day of November, 2026.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge